**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ENDURANCE WARRANTY SERVICES, L.L.C, an Illinois Limited Liability Company,<br><br>*Plaintiff*,<br><br>v.<br><br>PELICAN INVESTEMENT HOLDINGS, LLC, a Delaware Limited Liability Company, and NATIONAL ADMINISTRATIVE SERVICE CO., LLC, an Ohio Limited Liability Company,<br><br>*Defendants*. | ) | No. 26 C 1257<br>Chief Judge Virginia M. Kendall |

**OPINION & ORDER**

Plaintiff Endurance Warranty Services, L.L.C. ("Endurance") filed a seven-count lawsuit against Defendants Pelican Investment Holdings, L.L.C. ("Pelican") and National Administrative Service Co., LLC ("NASC"). (Dkt. 1). On February 11, 2026, Endurance and Pelican and NASC (collectively, "the Defendants") entered into an Agreed Order. (Dkt. 20). On April 27, 2026, the Court issued a Consent Decree and Final Judgment ("Consent Decree"), which the Defendants and Endurance had approved of, resolving the pending litigation before the Court. (Dkt. 39). Endurance has now filed a Motion for Contempt against the Defendants alleging that they violated the Agreed Order and Consent Decree. (Dkt. 40). The Court grants in part and denies in part Endurance's Motion [40].

## **BACKGROUND**

Endurance, since 2006, has provided direct-to-consumer vehicle service contracts. (Dkt. 1 ¶ 2). Vehicle service contracts provide consumers with coverage for the cost of future repairs after the original warranty provided by the vehicle's manufacturer expires. (*Id.*) Pelican also sells vehicle service contracts nationwide. (*Id.* ¶ 60). NASC allegedly writes the contracts for Pelican, and subsequently, enforces them. (*Id.*)

Around September of 2025, Endurance started receiving phone calls from customers asking to cancel their vehicle-service-contracts with Endurance. (*Id.* ¶ 60). During these phone calls, Endurance alleged that the Defendants and their agents made false, misleading statements to Endurance's clients to induce them to switch companies. (*Id.* ¶ 9). These statements resulted in Endurance losing customers. (*Id.* ¶ 15). Endurance then filed a lawsuit against the Defendants, on February 4, 2026, for violations of both federal and state law, including the Lanham Act. (*Id.* ¶¶ 95-157). Endurance sought, among other monetary remedies, a temporary, preliminary, and permanent injunction. (*Id.* ¶ 18).

On February 11, 2026, the Defendants and Endurance entered an Agreed Order where the Defendants agreed to not use "Endurance's customer list" or "Endurance's trade secret customer list." (Dkt. 20 at 1). The Agreed Order also required the Defendants, within twenty-four hours, to instruct their Sales Agents "not to use or make false or materially misleading statements or information to existing or prospective customers, including, but not limited to: (i) Endurance is being sued by a federal agency; (ii) Endurance is going out of business; (iii) repair shops and car dealers will no longer accept Endurance coverage; (iv) Endurance's policies are no longer in effect; and (v) any false or misleading statements about Endurance covering claims of its customers." (*Id.* at 2-3)

On April 27, 2026, the Defendants and Endurance entered a Consent Decree.[1] (Dkt. 39). The Consent Decree prohibits the Defendants from making "any false or misleading statements about Endurance to existing or prospective customers, or third parties, including, but not limited to, those" listed in the Consent Decree. (*Id.* at 3). The Consent Decree explicitly bans the Defendants "[i]n telemarketing calls or other customer-facing communications" from stating, "in form or substance, that: (a) Endurance is being sued by a federal agency, (b) Endurance is going out of business or is about to go out of business, (c) repair shops or car dealers will no longer accept Endurance plans or coverage, (d) Endurance's policies are no longer in effect, (e) Endurance has stopped paying claims or does not pay claims covered by its plans, and/or (f) statements that the Sales Agent knows that the customer is, in fact, an Endurance customer, when the Sales Agent does not know whether the customer is an Endurance customer." (*Id.* at 2-3).

To ensure compliance with the Consent Decree, the Defendants had to instruct all their Sales Agents, including new Sales Agents, on the terms of the Consent Decree and make reasonable efforts to ensure their Sales Agents followed the Court's Order. (*Id.* at 3). Endurance can only seek to enforce the terms of the Consent Decree if the Defendants materially breach it. (*Id.*) Furthermore, if any of the statements prohibited by the Consent Decree became truthful, then the Defendants can make those statements without violating the Consent Decree. (*Id.*)

After the Court issued the Consent Decree, Endurance alleges that Pelican, through its new name, HomeDrive Assurance ("HDA") started contacting Endurance's customers, engaging in false and materially misleading advertising. (Dkt. 40 at 1). NASC allegedly remains connected to

---

[1] The Court maintains jurisdiction over the case and the parties to enforce and interpret the Consent Decree.

HDA as it serves as the administrator of the vehicle-service contracts sold by HDA.[2] (Dkt. 41 at 2).

From April 15, 2026,[3] until Endurance blocked the phone number on May 21, 2026, Endurance received over 1,200 phone calls from 888-984-1438. (*Id.*) In these phone calls, customers informed Endurance that they sold or planned to sell their cars and wanted to cancel their direct-to-consumer vehicle service contracts. (*Id.*) Suspicious of the phone calls it kept receiving, Endurance investigated where these calls came from, and eventually determined the number belonged to the Defendants and their Sales Agents. (*Id.*) Once Endurance learned of the Defendants association with this phone number, it began to transcribe all phone calls coming from the 888-number and any conversation where a customer mentioned "HDA." (*Id.* at 3). To provide evidence of the alleged Consent Decree violations, Endurance included various telephone conversation transcripts of calls that took place between Endurance employees and customers. In each instance included below, the customer identified HDA as the entity making comments about Endurance's business. The Defendants dispute the accuracy of some of the transcripts provided by Endurance. (Dkt. 47 at 5).

Under the Consent Decree, neither the Defendants nor their Sales Agents can make any false statements or reference that "Endurance is going out of business or is about to go out of business." (Dkt. 39 at 2). HDA allegedly made the following statements to Endurance customers: Endurance is "about to file bankruptcy," Endurance is "about to go bankrupt," and "they were going to be filing bankruptcy because they haven't been taking care of their members" (Dkt. 41-1

---

[2] The Court makes clear that, while Pelican rebranded as HDA, NASC remains a distinct entity from HDA. The Court considers the information provided by the Defendants in their Motion for Leave to File Supplemental Brief and recognizes that NASC has not rebranded as HDA but retains its individual identity as NASC. (Dkt. 48).

[3] The Court approved the Consent Decree on April 27, 2026. The Court does not consider what took place before this date for purposes of the Defendants contemptuous behavior in violation of the Consent Decree.

at 562-63); "that [HDA was] going to take over [Endurance's] account" (*Id.*, at 577); "[t]hat's what they're saying is that Endurance is going bankrupt and that they're switching their customers over" (*Id.* at 608); and "they told me you guys were going out of business, have gone out of business, that they took over you guys because of some legal issue" (*Id.* at 656).

The Consent Decree also prohibits the Defendants and their Sales Agents from falsely alluding to or commenting on the fact that "repair shops or car dealers will no longer accept Endurance plans or coverage." (Dkt. 39 at 2). Endurance customers relayed the fact that HDA employees had informed them of the following: "Assurance people are calling up and telling people that Endurance is not take – is not taken by their insurance. They'll say that they're – that you all are red flagged," or "she said I was red flagged because she could see that nobody in the [] area took Endurance, that could work on my vehicle" (Dkt. 41-1 at 615); "because of the class action lawsuits, a lot of the dealerships are being kind of finicky about accepting third-party policies from [Endurance] because, again, they – they're typically not wanting to accept the ones that don't pay them directly or they have to chase down for their money. (Dkt. 41-2 at 740).

The Defendants also, cannot make any false comments that indicate "Endurance's policies are no longer in effect." (Dkt. 39 at 2). Customers claimed HDA or its Sales Agents have made the following remarks: "It's a company that's calling people up, and they're talking – and telling people that your Endurance policy is going to be terminated or whatever, that you have to switch over to them, and that's how they're getting people. (Dkt. 41-1 at 608).

The Consent Decree additionally prohibits the Defendants from falsely alluding to the fact that "Endurance has stopped paying claims or does not pay claims covered by its plans." (Dkt. 39 at 3). The following remarks in the telephone conversations indicate HDA may have improperly made remarks that Endurance does not pay or stopped paying its claims: "I got a call from one of

your competitors and they were telling me about all the lawsuits about claims not being paid" (Dkt. 41-1 at 594); "My question was like – well, your competitor started reaching out to us and it – talking about the class – some kind of class action suit you got – against you guy for not – not honoring or fixing the – on warranties or something" (*Id.* at 601); "that you all have a lawsuit; you are all in a bunch of lawsuits because you all don't pay" (*Id.* at 616); "I've been doing some research because there's another company saying that they're trying to get your customers. They saying that you guys are not efficient. You're not doing your claims" (*Id.* at 675); "but I've been getting phone calls from other like home – home assurance, you know, different extended warranty like – like, companies about dropping Endurance because of the – a lawsuit that's been going on and that they don't – they don't cover claims and all this stuff," "then they just go on a whole spiel about why we need to drop you guys and why – and because they're not covering claims and all this and all that, and I'm – like, it's happened, like, three times in the past, like, a couple weeks, and like, twice, in the past week" (*Id.* at 704); and Endurance engages in "[b]asically, just widespread systemic, unfair deny of claims, not covering the claims, unfair practices, breach of contract, long claims, delays, putting used parts in people's cars, not paying the dealerships, not reimbursing their customers, and the list goes on and on." (Dkt. 41-2 at 740).

Endurance alleges that these false accusations, in violation of the Agreed Order and Consent Decree, have caused Endurance to lose over 600 customers. (Dkt. 41 at 3). Endurance now brings a Motion for Contempt, asking the Court to hold the Defendants in contempt, issue an emergency injunction barring the Defendants from contacting Endurance customers, allow for an evidentiary hearing, and grant expedited discovery. (*Id.*)

## LEGAL STANDARD

Courts can issue civil or criminal contempt sanctions. To determine whether the court will issue a civil or criminal contempt sanction, the court looks at what the relief aims to achieve. *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 508 (7th Cir. 2016) (quoting *Hicks ex. Rel. Feiock v. Feiock*, 485 U.S. 624, 632 (1988)) (""the critical features are the substance of the proceeding and the character of the relief that the proceeding will afford.'"). "Civil contempt relief is either coercive or remedial." *Lightspeed Media Corp.*, 830 F.3d at 508 (7th Cir. 2016). "It is 'designed either to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy.'" *Id.* (quoting *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001)). On the other hand, criminal contempt "sanctions are punitive: they are meant 'to vindicate the authority of the court.'" *Id.* (quoting *Dowell*, 257 F.3d at 699).

"To prevail on a request for a contempt finding, the moving party must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010); *Nat'l Lab. Rels. Bd. v. Haven Salon + Spa, Inc.*, 60 F.4th 1058, 1060 (7th Cir. 2023). Once the court determines the party satisfied its burden of proof for a finding of contempt, the Court has the authority to enforce its order through civil or criminal contempt. *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 757 (7th Cir. 2008).

## **DISCUSSION**

Endurance filed a Motion for Contempt against the Defendants. (Dkt. 40) Endurance requests that, in addition to holding the Defendants in contempt, that the Court: (1) grant an "emergency injunction" prohibiting the Defendants from contacting Endurance's customers (2) provide an order to expedite discovery, (3) and hold a hearing to establish the full extent of the Defendants' conduct. (*Id.* ¶ 15).

"Civil contempt is a severe remedy" that "should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) (cleaned up). While Endurance has provided the Court with sufficient evidence to indicate that the Defendants have likely violated the Consent Decree, the parties dispute the truth of the evidence provided by Endurance and the scope of the Defendants alleged contemptuous actions. The Court, therefore, needs additional information to resolve the question of contempt. As such, the Court grants Endurance's request for expedited discovery and a hearing to establish the scope of the Defendants' conduct.

Regarding expedited discovery, the Court grants Endurance's request for the following: "Plaintiff and Defendants shall be limited to serving 10 interrogatories and requests for production on the other side. Endurance shall be entitled to take the 30(b)(6) deposition of each Defendant covering no more than 10 topics. Defendants shall be entitled to take two depositions, collectively, of Endurance, including, if they so desire, a 30(b)(6) deposition, covering no more than 10 topics. Each deposition shall be limited to three (3) hours of testimony." (Dkt. 40 Ex. 1).

The Court, finally, reminds the parties about the need to follow the Consent Decree [39]. *Mac Naughton v. Asher Ventures, LLC*, 76 F.4th 539, 543 (7th Cir. 2023) (court orders are binding

on parties). Failure to do may result in sanctions, including the Court holding the Defendants in contempt. *In re Res. Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010) (district court can hold a party in contempt if it "finds by clear and convincing evidence that a party has violated the express and unequivocal command of a court order.").

**CONCLUSION**

The Court grants in part and denies in part Endurance's Motion for Contempt [40]. The Court denies, without prejudice, Endurance's request to hold the Defendants in contempt and to issue an emergency injunction. The Court, however, grants Endurance's request for expedited discovery and for a hearing to determine the full extent of the Defendants alleged contemptuous behavior. The Court also grants the Defendants Motion for Leave to File Supplemental Brief [48].

Virginia M. Kendall
United States District Judge

Date: October 28, 2026